**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Philip Simon,                                          Civ. No. 08-4804 (MJD/JJK)

        Petitioner,

        v.                                          **REPORT AND**
                                                       **RECOMMENDATION**
M. Cruz, Warden,

        Respondent.

---

Philip Simon, Federal Prison Camp - Florence, P.O. Box 5000, Florence, Colorado, 81226, Petitioner, *pro se*.

Tracy L. Perzel, Assistant United States Attorney, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

        This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner Philip Simon for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He claims that he has been wrongly deprived of 45 days of good-time credit, and that the Bureau of Prisons ("BOP"), is therefore intending to keep him in federal custody beyond his proper release date.  Respondent has opposed the petition, and both sides have briefed the issues presented in this case.  The matter has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, this Court concludes that Petitioner's habeas corpus petition

1

should be DISMISSED WITH PREJUDICE.

## BACKGROUND

The relevant facts of this case are not in dispute.  Petitioner is serving a

188-month federal prison sentence, which was imposed in the District of

Nebraska in 1999.  He was serving his sentence at the Federal Prison Camp in

Duluth, Minnesota, ("FPC-Duluth"), when the events giving rise to this action

occurred.  However, he was later transferred to the Federal Prison Camp in

Florence, Colorado, where he remains confined at this time.[1]  Petitioner's

currently projected release date is September 17, 2012.

On February 17, 2008, a member of the prison staff at FPC-Duluth

searched a "hobbycraft locker" that belonged to Petitioner, and found 360

stamps.  As a result, Petitioner was accused of violating a prison rule that

prohibits prisoners from possessing more than 60 stamps.  Petitioner was

formally charged with violating Rule 305, which bans "Possession of anything not

---

[1]      Although Petitioner is no longer incarcerated in the District of Minnesota, his current habeas corpus petition can still be properly adjudicated here because he was confined in this District when the petition was filed.  *See McCoy v. United States Board of Parole*, 537 F.2d 962, 966 (8th Cir. 1976) (stating that the federal court for the district where a prisoner was incarcerated when he filed his habeas corpus petition does not lose jurisdiction when the prisoner is transferred to another district while his petition is still pending); *see also Wright v. Lacy*, 664 F. Supp. 1270, 1271 n.1 (D. Minn. 1987) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.").

authorized for retention or receipt by the inmate, and not issued to him through regular channels." 28 C.F.R. § 541.13, Table 3, Code § 305. The charge was referred to a prison "Unit Disciplinary Committee" ("UDC"), for resolution. Petitioner admitted to the UDC that he had possessed the stamps, and he was found guilty of the charged offense. The UDC imposed a disciplinary sanction that deprived Petitioner of his commissary and visiting privileges for 90 days.

Sometime later during the same day that the stamps were found in Petitioner's hobbycraft locker, prison officials searched another locker that belonged to Petitioner, which was located in his dormitory. More than 1000 stamps were found in that second locker. Petitioner was then charged with a second rule violation. He was again charged with violating Code 305, but this time, because the charge involved a second offense, the UDC had to refer the matter to a Disciplinary Hearing Officer ("DHO"). 28 C.F.R. § 541.13 (a)(3).

At the DHO hearing, Petitioner acknowledged that he possessed the stamps found in the second locker, and he was found guilty of a second violation of Code 305. The DHO imposed the following disciplinary sanctions:

(1) "Disallow 14 days good conduct time";

(2) "Forfeit 45 days nonvested good conduct time";

(3) "21 days disciplinary segregation suspended pending 90 days clear conduct"; and

(4) "6 months loss of commissary and phone."[2]

Petitioner is not presently challenging the guilty finding in either of the two disciplinary proceedings stemming from the stamps found in his lockers.  His current habeas corpus petition challenges only the *sanctions* imposed by the DHO in the *second* disciplinary proceeding.  Moreover, he is challenging only one of the four sanctions imposed by the DHO – namely, the forfeiture of 45 days of nonvested good-conduct time.  Petitioner contends that the DHO could not properly impose that sanction because it is not authorized by the applicable BOP regulations.  He is seeking a writ of habeas corpus that would restore the 45 days of good-conduct time that he believes was wrongly taken from him by the DHO's disciplinary sanctions.  This Court finds that such relief cannot be granted for the reasons discussed below.[3]

## DISCUSSION

Petitioner's challenge to the disciplinary sanction at issue in this case (*i.e.*, the forfeiture of 45 days of nonvested good-conduct time), is grounded on 28

---

[2]   A copy of the DHO's written report is included in the current record as an attachment ("Attachment E"), to the "Declaration of Angela Buege."  (Doc. No. 8.) The sanctions imposed by the DHO, as quoted in the text, appear on the second page of the report.

[3]   Respondent concedes that Petitioner has exhausted his available administrative remedies (Doc. No. 8, Decl. of Angela Buege ¶ 17), and thus his current habeas corpus claim can properly be adjudicated on the merits.

C.F.R. § 541.13.  That regulation establishes four categories of "prohibited acts," and prescribes the disciplinary sanctions that can be imposed if an inmate is found guilty of a prohibited act.  The four categories of prohibited acts, which are listed at Table 3 of the regulation, are identified as:

(1) "greatest" – for violations of code sections 100-199;

(2) "high" – for violations of code sections 200-299;

(3) "moderate" – for violations of code sections 300-399; and

(4) "low moderate" – for violations of code sections 400-499.

Table 3 also sets forth a separate list of authorized sanctions for each category of prohibited acts.  These authorized sanctions include punishments such as loss of privileges (*e.g.*, commissary, telephone, visitation, recreation, etc.), a change of housing assignment, a prison transfer, or a loss of credit for good-conduct time.

Petitioner was found guilty of two separate Code § 305 violations, so both of his offenses were within the "moderate" category of prohibited acts.  Petitioner was therefore subject to the disciplinary sanctions (set forth in Table 3), which apply to prohibited acts in the "moderate" category.

Four of the authorized sanctions in the "moderate" category directly affect the number of days that an inmate will spend in prison.  Those four sanctions are described as follows:

A.  Recommend parole date rescission or retardation.

B.  Forfeit earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

. . . .

F.  Withhold statutory good time.

28 C.F.R. § 541.13 (Table 3).

Two of these four authorized sanctions, identified as "A" and "F," are clearly inapposite here, because they describe punishments affecting only "parole date[s]" and "statutory good time," which apply only to prisoners whose sentences pre-date the Sentencing Reform Act ("SRA").  Petitioner was convicted and sentenced in 1999, for an offense that occurred in 1998, and his sentence is, undisputedly, governed by the SRA.  Because Petitioner is a post-SRA prisoner, the concepts of "parole," "statutory good time" ("SGT"), and "extra good time" ("EGT"), are entirely irrelevant to him, and the sanctions identified as "A" and "F" are wholly inapplicable to him.

The old statutes that authorized SGT and EGT—18 U.S.C. §§ 4161 and 4162—have been replaced by 18 U.S.C. § 3624(b), which allows federal inmates to reduce their prison terms by earning "Good Conduct Time" ("GCT").  The BOP

6

can award a prisoner up to 54 days of GCT credit per year. 18 U.S.C. § 3624(b).

*See also* 28 C.F.R. § 541.13, Table 4, § 1(b.1)I ("An inmate sentenced under the

Sentencing Reform Act . . . may not receive statutory good time, but is eligible to

receive 54 days good conduct time credit each year."). GCT credits are accrued,

earned, and calculated on an annual basis, but they do not become "vested" until

the inmate is released from custody. 18 U.S.C. § 3624(b)(2) ("[C]redit awarded

under this subsection after the date of enactment of the Prison Litigation Reform

Act [April 26, 1996], shall vest on the date the prisoner is released from

custody."); 28 C.F.R. § 541.13, Table 4, § 1(b.1)I ("For crimes committed on or

after April 26, 1996, credit toward an inmate's service of sentence shall vest on

the date the inmate is released from custody.").

The sanctions authorized by 28 U.S.C. § 541.13 include deprivation of

non-vested GCT credits. GCT credits that have been accrued and earned, but

have not yet been awarded and vested, can be "forfeited." *See id.* at Table 4 §

1(b) ("The amount of good conduct time (GCT) available for forfeiture is limited to

the total number of days in the 'non-vested' status at the time of the misconduct

(less any previous forfeiture)."). In addition, GCT credits that are available, but

have not yet been earned and accrued, can be "disallowed." *See id.* at Table 4,

§ 1(b.1)I ("Prior to this award being made, the credit may be disallowed for an

inmate found to have committed a prohibited act.").[4]

The "moderate" category of Table 3 (of § 541.13) includes two authorized sanctions that pertain to the forfeiture and disallowance of GCT credits – Sanctions B and B.1.   Sanction B can cause an inmate to "[f]orfeit earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time."  Thus, it appears that Sanction B pertains to the forfeiture of (a) GCT that has been earned (but is not yet vested), and (b) pre-SRA awards of SGT and EGT.  Sanction B.1. authorizes a DHO to "[d]isallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year."  This Court understands this to mean that an inmate who is found guilty of a "moderate" category prohibited act can lose up to 14 days of not yet accrued GCT, under Sanction B.1, as well as 30 days of previously accrued (but not vested) GCT, under Sanction B.

In the present case, the DHO imposed sanctions that (a) "disallow[ed] 14

---

[4]     *See also* BOP Program Statement 5880.28 (Chap. I, § 2.m., p. 1-78T), which states that:

> GCT shall vest on the date the inmate is released from custody.  As a result, all GCT earned in the year or years preceding the current or final partial year is available for *forfeiture* for acts of misconduct. GCT for the current or final partial year may be *disallowed* (not forfeited).

(Emphasis added.)

days good conduct time," and (b) "forfeit[ed] 45 days nonvested good conduct

time."  Petitioner acknowledges (at least implicitly), that the disallowance of 14

days of available GCT is an authorized sanction for a "moderate" category

prohibited act under Sanction B.1.  He contends, however, that the forfeiture of

45 days of nonvested GCT is *not* an authorized sanction.  Petitioner states his

argument as follows:

> Forfeiting of nonvested good conduct time, . . . [*i.e.*, the 45-day
> forfeiture of nonvested GCT imposed by the DHO], only applies to
> pre November 1, 1987, 'old law inmates,' [*i.e.*, pre-SRA inmates]
> . . . . [Petitioner's] date of offense was April 17, 1998; therefore, he is
> clearly a 'new law' inmate and *subject only to* 28 CFR Ch. V §
> 541.13 Table 4 [sic] - *Sanction B.1 and not to both B and B.1.*

(Doc. No. 2, Pet'rs Mem. of Law and Fact in Supp. of Title 21 [sic] U.S.C. § 2241

Pet. 2 (emphasis added).)

Petitioner's argument is grounded on the introductory paragraph of an

Appendix to a BOP Program Statement – P.S. 5270.07 (Chapter 4, Appendix,

["Disallowance of Good Conduct Time"]).[5]  The first sentence of this Appendix

states that "*Sanctions B and F* of the Prohibited Acts and Disciplinary Severity

Scale, pertain to statutory good time and *do not apply to inmates committed*

*under the Sentencing Reform Act* provisions of the Comprehensive Crime

Control Act."  (Emphasis added.)  It must be acknowledged that this sentence,

---

[5]     A copy of this Appendix is attached to Petitioner's Memorandum of Law
and Fact in Support of Title 21 [sic] U.S.C. § 2241 Petition.

taken at face value, seems to support Petitioner's contention that because he is a

post-SRA prisoner, he is subject only to Sanction B.1 and not to both Sanction B

and B.1.  Moreover, if that contention were valid, then Petitioner apparently could

not be deprived of more GCT credit than the 14-day maximum authorized by

Sanction B.1.[6]

However, Respondent contends that Petitioner's challenge to his

disciplinary sanctions must be rejected, because it does not take into account the

additional sanctions that are authorized by 28 C.F.R. § 541.13, Table 5, for

situations involving "Repetition of Prohibited Acts Within Same Category."  This

Court agrees.

Table 5 provides that if an inmate is found guilty of a second "moderate"

category prohibited act within twelve months after another such offense, the DHO

---

[6]     Frankly, this Court is a bit puzzled by the Program Statement's apparent
assertion that Sanction B does not apply to post-SRA prisoners.  It is certainly
true that much of Sanction B – namely the references to SGT and EGT – cannot
be applicable to post-SRA prisoners.  However, Sanction B's reference to the
forfeiture of "non-vested good conduct time" would appear to apply *only* to post-
SRA prisoners.  Thus, it is unclear why the Program Statement would suggest
that Sanction B is wholly inapplicable to post-SRA prisoners.  Unfortunately,
nothing in the submissions of either party sheds any light on the intended
distinction between Sanction B and Sanction B.1, or the true meaning of the first
sentence of the Program Statement Appendix cited by Petitioner.  Those
mysteries, however, need not be solved here, because Petitioner's challenge to
his disciplinary sanction must be rejected in any event, for the reasons discussed
immediately hereafter.

may impose a sanction that causes the inmate to "forfeit earned SGT or *non-vested GCT* up to 37½ % or *up to 45 days*, whichever is less, and/or terminate or disallow EGT."  (Emphasis added.)  The prohibited act at issue in this case was Petitioner's second "moderate" category offense within twelve months (the first being the offense involving the stamps found in the hobbycraft locker), so he was subject to the additional sanctions authorized by Table 5.  The DHO obviously relied on Table 5 when he imposed the sanction that caused Petitioner to "forfeit 45 days of nonvested good conduct time."[7]  This Court finds that the DHO properly relied upon Table 5, and imposed a disciplinary sanction that was authorized by the applicable regulation.  Because the forfeiture of 45 days of nonvested good-conduct time is an authorized sanction under Table 5, Petitioner's present challenge to that sanction must be rejected.

In sum, this Court finds that the sanction that the DHO imposed for Petitioner's second "moderate" category prohibited act was authorized and proper under the governing regulation – 28 C.F.R. § 541.13, Table 5.  This Court

---

[7]     The Court recognizes that Table 5 authorizes the forfeiture of 45 days, or 37½ %, of an inmate's nonvested GCT, <u>whichever is less</u>.  Although the parties have not briefed the issue, it clearly appears that 45 days is less than 37½ % of Petitioner's nonvested GCT.  Petitioner apparently had been in prison for at least eight years before the disciplinary offenses at issue here, and he presumably accumulated 54 days of GCT during each of those eight years.  Therefore, when the DHO sanctioned Petitioner, he must have then had at least 432 days of nonvested GCT, (54 days per year x 8 years = 432 days).  37½ % of 432 days is 162 days.  Thus, the 45-day forfeiture imposed by the DHO did not exceed the

(Footnote Continued on Next Page)

therefore recommends that Petitioner's current habeas corpus petition be denied,

and that this action be dismissed with prejudice.

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.      Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2241 (Docket No. 1), be **DENIED**; and

2.      This action be **DISMISSED WITH PREJUDICE**.


Dated: March 9, 2009


                                        _s/ Jeffrey J. Keyes_____
                                        JEFFREY J. KEYES
                                        United States Magistrate Judge


Under D. Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**March 24, 2009**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within ten days after service thereof.  All briefs filed under
this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

---

(Footnote Continued from Previous Page)
maximum authorized by Table 5.